IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GOODMAN CO., L.P. | § | |
| (formerly known as AMANA CO., L.P.), | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. H-05-3093 |
| V. | § | |
| | § | |
| A & H SUPPLY, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

The following motions are pending:

- A & H Supply, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. (Docket Entry No. 3).

- A & H Supply, Inc.'s Motion to Transfer Venue under 28 U.S.C. § 1404(a). (Docket Entry No. 4).

Based on the motions and the responses, the pleadings, the parties' submissions, and the applicable law, this court denies both the motion to dismiss and the motion to transfer venue. The reasons are explained in detail below.

**I.    Background**

Goodman Company, a Delaware limited partnership, is headquartered in Texas and has its principal place of business in Houston, Texas. (Docket Entry No. 5, ¶ 2). Goodman's primary business is the manufacture and marketing of air conditioning and heating units,

parts, and equipment. (Docket Entry No. 8, Ex. 2, ¶ 3). Goodman entered into a distributorship agreement with Even-Aire, an Idaho corporation, in the early 1990s. Under the agreement, Goodman was to sell or consign air conditioning and heating units and equipment to Even-Aire for resale in Idaho. (*Id.*, ¶ 4). The units were manufactured in Tennessee and Texas. (*Id.*).

In late 1998, Gerry A. Evangelho, the president and a primary shareholder of Even-Aire, told Goodman that he was considering transferring his ownership interest in Even-Aire to Scott Brannan, a party with whom Goodman had no relationship. (*Id.*, ¶ 5). Goodman told Evangelho that it would no longer extend credit to Even-Aire. (*Id.*). Evangelho and Goodman continued their discussions over the telephone, with Goodman in Texas and Evangelho in Idaho. (*Id.*). To induce Goodman to continue to supply Even-Aire with the units on credit, Evangelho negotiated a guaranty of Even-Aire's debts by A&H Supply, an Idaho company. Evangelho also served as president of A&H Supply. Goodman prepared the guaranty in Houston and mailed it to Evangelho, who signed it in Idaho on behalf of and as president of A&H Supply and returned it to Houston. (*Id.*). In the guaranty, A&H Supply broadly agreed to pay Even-Aire's obligations to Goodman. (Docket Entry No. 8, Ex. 1). The guaranty stated in relevant part, as follows: "This contract shall be considered to be a Texas contract for all purposes and shall be interpreted under the laws of the State of Texas, irrespective of the state of actual execution." (*Id.*).

Because of A&H Supply's agreement to guarantee Even-Aire's debts, Goodman continued to extend credit and ship goods to Even-Aire from 1999 to 2004. (*Id.*, ¶ 6). In

2005, Even-Aire defaulted on its accounts payable to Goodman and filed for bankruptcy. (*Id.*, ¶ 8). Even-Aire currently owes Goodman $206,837.97. Goodman claims that A&H Supply is liable for that debt under the guaranty and sued A&H Supply on the guaranty. (Docket Entry No. 5, ¶ 1). A&H Supply has moved to dismiss, arguing that this court lacks personal jurisdiction because A&H lacks minimum contacts with Texas. (Docket Entry No. 3). Alternatively, A&H Supply moves to transfer to the District of Idaho.

## II.     The Motion to Dismiss

### A.     The Applicable Legal Standard

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the long-arm statute of the forum state confers personal jurisdiction over that defendant, and the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. *Delta Brands v. Danieli Corp.*, 99 Fed. Appx. 1, 8 (5th Cir. 2004) (unpublished opinion); *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001); *Latshaw v. H.E. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). The Texas long-arm statute, Tex. Civ. Prac. & Rem. Code Ann. § 17.041 *et seq.*, confers jurisdiction to the limit permitted by due process. *See Delta Brands*, 99 Fed. Appx. at 7–8; *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999) (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990)). In Texas, the personal jurisdiction inquiry is coterminous with the due process analysis. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424–25 (5th Cir. 2005).

The Due Process Clause of the Fourteenth Amendment allows the exercise of personal jurisdiction over a nonresident defendant when that defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state, and the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." *Latshaw*, 167 F.3d at 211 (quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)). A court may assert personal jurisdiction under a theory of "general" or "specific" personal jurisdiction.

Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994) (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). A court may exercise specific jurisdiction if: (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendant's contacts with the forum state. *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). The Due Process Clause protects an individual's interest in not being subject to the judgments of a forum with which he has not established meaningful contacts, ties, or relations. *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003) (citing *Int'l Shoe*, 326 U.S. at 319). A court must "examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice."

*Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 772 (5th Cir. 1988) (citations omitted); *see also Freudensprung*, 379 F.3d at 343.

Specific jurisdiction requires a sufficient nexus between the nonresident defendant's contacts with the forum and the cause of action. *Rittenhouse v. Mabry*, 832 F.2d 1380, 1390 (5th Cir. 1987). Specific jurisdiction is limited to adjudication of the particular controversy that arises out of or is related to the defendant's contacts with the forum. *Freudensprung*, 379 F.3d at 343; *Petroleum Helicopters, Inc. v. Avco Corp.*, 804 F.2d 1367, 1370 (5th Cir. 1986). Even a single act can support specific jurisdiction where it creates a substantial connection with the forum state. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957); *Religious Tech. Center v. Liebreich*, 339 F.3d 369, 375 (5th Cir. 2003). The nonresident defendant's action giving rise to specific jurisdiction must "be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993); *Compana v. Emke*, No. 03-2372 , 2004 WL 2058782 at *7 (N.D. Tex. Sept. 15, 2004) (unpublished opinion) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

When the cause of action does not arise from or relate to the foreign defendant's purposeful conduct within the forum state, due process requires that the foreign defendant have engaged in continuous and systematic contacts with the forum state before a court may exercise general personal jurisdiction. *Helicopteros*, 466 U.S. at 414–15; *Freudensprung*, 379 F.3d at 343; *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987). The plaintiff must demonstrate contacts of a more extensive quality and nature between the forum

state and the defendant than those needed to support specific jurisdiction. *Dalton v. R & W Marine*, 897 F.2d 1359, 1362 (5th Cir. 1990) (citations omitted). "To exercise general jurisdiction, the court must determine whether 'the contacts are sufficiently systematic and continuous to support a reasonable exercise of jurisdiction.'" *Holt Oil & Gas v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985) (citations omitted)); *see also Freudensprung*, 379 F.3d at 343.

When a nonresident defendant challenges personal jurisdiction, the plaintiff bears the burden of demonstrating facts sufficient to support jurisdiction. *Stuart*, 772 F.2d at 1192 (citations omitted). "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Id.* "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'" *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Wilson v. Bolin*, 20 F.3d 644, 648 (5th Cir. 1994)). The court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000) (quoting *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999)).

**B.     Analysis**

A&H Supply makes two arguments against the exercise of personal jurisdiction by this court. First, it argues that A&H Supply lacks minimum contacts with Texas. Second,

it argues that an exercise of jurisdiction over A&H Supply would be unfair. Each argument is addressed in turn.

### 1. Minimum Contacts

A&H Supply argues that it did not purposefully avail itself of the benefits of Texas law. A&H admits that the guaranty contains a choice-of-law provision that provides for the contract to be governed by Texas law, but it distinguishes a choice-of-law provision from a forum selection clause and argues that a choice-of-law provision is merely a "factor" in the jurisdiction analysis that is not sufficient to confer jurisdiction. (Docket Entry No. 3, ¶ 7).

The Fifth Circuit has held that a choice-of-law provision, coupled with an expansive guaranty like the one present here, is sufficient to establish minimum contacts supporting personal jurisdiction. In *Marathon Metallic Bldg. Co. v. Mountain Empire Construction Co.*, 653 F.2d 921, 923 (5th Cir. 1981), the court analyzed a guaranty executed by a nonresident defendant in favor of a Texas company. Marathon, a Texas corporation, manufactured and sold prefabricated buildings in Houston, Texas. *Id.* at 922. Three Colorado residents who formed a Colorado corporation, Mountain Empire, executed a guaranty on behalf of that corporation with Marathon. *Id.* A month later, the two corporations entered a contract governing their business relationship that included a Texas choice-of-law provision. *Id.* When Mountain Empire failed to pay its debts to Marathon, Marathon brought suit in Texas against it and joined one of the three individuals who had signed the guaranty. *Id.* That individual claimed that Texas did not have personal jurisdiction over him. The Fifth Circuit

held that the guaranty created sufficient minimum contacts for a Texas court to exercise personal jurisdiction over the nonresident individual defendant. *Id.* at 923.

The facts in this case are similar to those in *Marathon*. A&H Supply negotiated the guaranty with Goodman representatives in Houston. (Docket Entry No. 8, Ex. 2, ¶ 5). A&H issued a continuing guaranty to Goodman, a Texas corporation. A&H Supply sent the signed and notarized copy of the guaranty to Goodman in Houston. (*Id.*; Docket Entry No. 8, Ex. 1). The guaranty contemplated continuing and repeated advances of equipment and credit by Goodman in Texas, with an open-ended obligation on the part of A&H to repay. "This Guaranty Agreement is absolute, continuing and unconditional; shall not be limited in amount; and shall include, at all times, the full indebtedness of said purchaser to [Goodman]." (Docket Entry No. 8, Ex. 1). As a result of the guaranty, Evan-Aire entered into repeated transactions with the Texas entity, over an extended period, often purchasing merchandise that was made in Texas. (Docket Entry No. 8, Ex. 2, ¶¶ 6–7). In *Marathon*, the court held that these factors created, "at the least, a minimum contact with Texas." 653 F.2d at 923. "The effect of such a guaranty is to involve [the guarantor] in each such advance of credit over many months and purposefully to cause business activity, foreseeable by [the guarantor], in the forum state." *Id.*

Cases decided since *Marathon* hold that merely entering a contract with a resident is not sufficient to create jurisdiction over the nonresident defendant. *Freudensprung*, 379 F.3d at 344; *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997). The courts must examine the

nature and extent of the contractual relationship as well as its formation, to determine whether personal jurisdiction is appropriate. *Stuart*, 772 F.2d at 1194 ("[T]he agreement entered into [in this case] did not contemplate a long-term relationship with the kinds of continuing obligations and wide-reaching contacts envisioned by the *Burger King* contract."). A nonresident defendant may not be sued in a forum solely because of fortuitous contacts or the unilateral activity of another party, but jurisdiction is proper where the contacts "proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." *Stuart*, 772 F.2d at 1191 (quotations and citations omitted). "For example, 'with respect to interstate contractual obligations, [the Court has] emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulations and sanctions for the consequences of their activities.'" *Id.* (quoting *Burger King*, 471 U.S. at 473.

The Fifth Circuit has held that if a nonresident initiates the negotiation of a long-term contractual relationship with a company located in Texas, with the representatives of that company in Texas, that may be "reaching out" to create a contact with sufficient to create personal jurisdiction over the nonresident in Texas. *Central Freight Lines*, 322 F.3d at 382 ("[A]ll of the formal negotiations took place via telephone and written correspondence between the two parties from their respective headquarters. In other words, [the defendant] can not really dispute the fact that, during the course of negotiations, [it] specifically and deliberately 'reached out' to a Texas corporation by telephone and mail with the deliberate aim of entering into a long-standing contractual relationship with a Texas corporation.").

A&H Supply deliberately "reached out" to a Texas company to initiate negotiations on a long-term contractual relationship. (Docket Entry No. 8, Ex. 2). Evangelho initiated the guaranty on behalf of A&H Supply and Even-Aire, encouraging Goodman to supply Even-Aire and extend the company credit, despite Goodman's lack of relationship with the company. (*Id.*). A&H Supply knew that Goodman was a Texas company. The guaranty was prepared in Houston and returned to Houston. (*Id.*). The negotiations occurred with the Goodman representatives in Houston. (*Id.*). The guaranty contemplated an extensive and ongoing relationship between A&H Supply and Goodman, with Goodman continuing to supply Even-Aire with equipment and credit based on A&H Supply's guaranty. (Docket Entry No. 8, Ex. 1). As in *Marathon* and *Central Freight Lines*, A&H Supply reached out to a Texas corporation with the intent of creating a long-term relationship with it. "That the defendant refrained from physically entering the forum state is not of itself sufficient to avoid jurisdiction if a substantial connection otherwise exists." *Stuart*, 772 F.2d at 1191 (citing *Burger King*, 471 U.S. at 476); *see also Central Freight Lines*, 322 F.3d at 382.

The language in the guaranty put A&H Supply on notice that it could be haled into a Texas court, in light of the other circumstances of the relationship with Goodman. A choice-of-law provision by itself is insufficient to create personal jurisdiction or put a defendant on notice that it might be subject to suit in a different state, but it is nonetheless a factor in the minimum contacts analysis. *Stuart*, 772 F.2d at 1195 ("[C]hoice-of-law provisions warrant some weight in considering whether a defendant has purposefully invoked the benefits and protection of a state's laws for jurisdictional purposes, 'although such a

provision standing alone would be insufficient to confer jurisdiction.'" (quoting *Burger King*, 471 U.S. at 482); *see also Nw. Airlines, Inc. v. Astraea Aviation*, 111 F.3d 1386, 1390 (8th Cir. 1997). In *Central Freight Lines*, the court described a choice-of-law clause as one way that a defendant might be put on notice that it could be amenable to suit in Texas, even absent a forum selection clause. "Although the [contract] does not contain a forum selection clause, a choice-of-law clause, or some other provision that could have put [the defendant] on specific notice that it might be amenable to suit in Texas. . . ." 322 F.3d at 383.

Unlike a choice-of-law provision in a contract, a choice-of-forum clause does give a court jurisdiction over a nonresident defendant. "A forum selection provision in a written contract is *prima facie* valid and enforceable unless the opposing party shows that enforcement would be unreasonable." *Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995); *see also Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 299 (5th Cir. 2004). A forum-selection clause demonstrates a party's consent to jurisdiction in a specific forum, and courts, absent a showing of fraud or overreaching in creating the clause, enforce such consent. *See Kevlin*, 46 F.3d at 15.

The guaranty at issue does not include a forum-selection clause. It does include a choice-of-law provision, specifying the application of Texas law. The guaranty then goes further, providing that the guaranty is to be a Texas contract "for all purposes." Not only is Texas law to govern the guaranty; it is a Texas contract "for all purposes." While the language is not so clear as a forum-selection clause, it clearly puts A&H Supply on notice that it might be haled into court in Texas in a cause of action arising from the guaranty. In

light of the other factors in this case—that A&H knew that Goodman was a Texas company; that A&H was embarking on a long-term contractual relationship with a Texas company; that A&H Supply initiated the relationship with the Texas company; and that A&H Supply induced it to take action with clearly foreseeable effects in the State of Texas—this court holds that A&H Supply should have anticipated being subject to suit in Texas on the guaranty.

### 2.     The Fairness of Exercising Jurisdiction

In deciding whether it is fair and reasonable to require a nonresident to defend in Texas, a court must consider several factors: (1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Central Freight Lines Inc. v. APA Transport Co.*, 322 F.3d 376, 384 (5th Cir. 2003) (citations omitted); *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 324 n.9 (5th Cir. 1996). "Once a plaintiff establishes minimum contacts between the defendant and the forum State, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable. The defendant must make a 'compelling case.'" *Central Freight*, 322 F.3d at 384 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)) (other citations omitted).

A&H argues that it would be substantially burdened if it is required to defend in Texas, that Texas has only a minimal interest in the case, and that Idaho has a substantial

interest in this case. None of these arguments persuasively demonstrates that "traditional notions of fair play and substantial justice" would be offended by asserting personal jurisdiction over A&H in this case. The burden on A&H in litigating in Texas is no greater than requiring Goodman to litigate in Idaho. Texas has an interest in providing a forum for this litigation "over a contract that produced substantial business activity in Texas, with consequent extensions of credit, and that requires the application of Texas law." *Marathon*, 653 F.2d at 923. The guaranty must be interpreted under Texas law.

It is not unfair to require A&H to respond in Texas to an action on a guaranty that it voluntarily entered into with a Texas corporation and that invited a Texas company to rely on it as a basis for credit sales. A&H purposefully availed itself of the benefits and protection of Texas law by engaging in activity it knew, and indeed intended, to have consequences in Texas—signing a guaranty so that a Texas company would extend credit on the condition that it be repaid. Had A&H wanted to prevent the risk of litigation in Texas, it certainly could have: "[b]y refusing to contract with the resident plaintiff and thereby 'severing its connection with the State,' the defendant 'can act to alleviate the risk of burdensome litigation.'" *Miss. Interstate Express*, 681 F.2d at 1008 (quoting *World-Wide Volkswagen*, 444 U.S. at 295–98); *see also Marathon*, 653 F.2d at 923 (finding it fair to exercise personal jurisdiction over a nonresident guarantor).

Even-Aire filed for bankruptcy in Idaho, but that bankruptcy is no longer pending. (Docket Entry No. 3, ¶ 10). The terms of the guaranty makes Even-Aire's bankruptcy only minimally relevant to this suit. The guaranty provides that "[A&H Supply] hereby agrees

to pay promptly, upon written or verbal demand, any and all sums or amounts due and owing [Goodman], by [Even-Aire] during the life of this agreement.  It is expressly agreed that [Goodman] shall not be required first to proceed against or exhaust its remedies against [Even-Aire] before making demand under this instrument." (Docket Entry No. 8, Ex. 1). Even without this express statement, Texas law holds a guarantor primarily liable on a debt. *Hopkins v. First Nat. Bank at Brownsville, TX*, 551 S.W.2d 343, 345 (Tex. 1977).  Asserting personal jurisdiction over A&H in this case is not unconstitutionally offensive to traditional notions of fair play and substantial justice in light of Texas's interest in the case. *See Cental Freight*, 322 F.3d at 385 (finding it fair and reasonable to assert personal jurisdiction over a case, even though a counterclaim, with identical claims, had been pending in another state for six months).

The guaranty created minimum contacts between A&H and the State of Texas sufficient to establish jurisdiction.  The suit arises out of and is related to A&H's contacts with the state; the suit is over enforcement of the guaranty that created minimum contacts. The exercise of specific jurisdiction is appropriate.   It is neither unfair nor unreasonable for a Texas court to exercise personal jurisdiction over A&H Supply.  The motion to dismiss for lack of specific personal jurisdiction is denied.

**II.     The Motion to Transfer Venue**

    **A.     The Applicable Legal Standard**

A motion to transfer venue from one federal district court to another is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses,

in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of this statute is to protect litigants, witnesses, and the public against unnecessary inconvenience and expense, and to avoid wasted time, energy, and money. *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964); *Jackson v. W. Telemarketing Corp. Outbound*, 245 F.3d 518, 522 (5th Cir. 2001). The decision to transfer a pending case is committed to the sound discretion of the district court. *See Action Indus. v. United States Fid. & Guar. Co.*, 358 F.3d 337, 339 (5th Cir. 2004); *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988). The party moving for a change of venue bears the burden of demonstrating why the forum should be changed. *See Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989); *Toshiba Corp. v. Hynix Semiconductor, Inc.*, No. 04-2391, 2005 WL 2415960 at *2 (N.D. Tex. Sept. 30, 2005). "A plaintiff's choice of forum is entitled to some deference and generally should not be disturbed unless the balance of factors strongly favors the moving party . . . ." *Toshiba*, 2005 WL 2415960 at * 3; *see also Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 672 (5th Cir. 2003). Whether to transfer a case under section 1404(a) "turns on a number of private and public interest factors, none of which are given dispositive weight." *In re Volkswagen, AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citations omitted). The concerns include: (1) the availability of compulsory process for unwilling witnesses and cost of attendance for willing witnesses; (2) the relative ease of access to sources of proof; (3) the plaintiff's choice of forum; (4) the possibility of delay and prejudice if transfer is granted and all other practical problems that make trial of a case easy, expeditious and inexpensive; (5)

administrative difficulties; (6) the familiarity of the forum with the law that will govern the case. *See Toshiba*, 2005 WL 2415960 at * 3; *Lebouef v. Gulf Operators, Inc.*, 20 F. Supp. 2d 1057, 1059 (S.D. Tex. 1998); *Dearing*, 1 F. Supp. 2d at 664; *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 825 (S.D. Tex. 1993); *Hogan v. Malone Lumber, Inc.*, 800 F. Supp. 1441, 1443 (E.D. Tex. 1992). A court may consider a wide range of circumstances in evaluating the facts involved in each case. *See Hogan*, 800 F. Supp at 1443; *Frazier v. Commercial Credit Equip. Corp.*, 755 F. Supp. 163, 166 (S.D. Miss. 1991); *Fletcher v. Southern Pacific Transp. Co.*, 648 F. Supp. 1400, 1401 (E.D. Tex. 1986) (citations omitted).

**B.     Analysis**

A&H argues that, even if venue is proper in this district, this court should transfer this action to the Federal District Court in the District of Idaho. A&H asserts that litigating in Texas would be inconvenient; that many of its witnesses reside in Idaho; and that Idaho has a substantial interest in litigating the case there. These arguments do not satisfy A&H's burden of showing a basis for transfer.

While it is likely true that litigating this case in Idaho would be more convenient for A&H Supply, it would be much less convenient for Goodman. A case should not be transferred if the "only practical effect is to shift inconvenience from the moving party to the nonmoving party." *The CIT Group/Commercial Servs., Inc. v. Romansa Apparel, Inc.*, No. 02-1954, 2003 WL 169208 at * 4 (N.D. Tex. Jan. 21, 2003) (citations omitted). A&H Supply argues that its witnesses, including Scott Brannan and the present and former employees of Even-Aire and A&H Supply; documents; evidence surrounding Even-Aire's bankruptcy; and

third parties who are necessary to its defense all reside in Idaho. (Docket Entry No. 4, ¶¶ 7–8). Goodman responds that all of its witnesses and documents are located in Texas. (Docket Entry No. 9, Ex. 2).

A&H does not describe the nature or relevance of any testimony its witnesses or Scott Brannan would offer, or identify any third parties. *See Ledouef v. Gulf Operators, Inc.*, 20 F. Supp. 2d 1057, 1060 (S.D. Tex. 1998) ("The moving party must offer more than mere allegations that certain key witnesses are not available or are inconveniently located. Instead, the movant must specifically identify the key witnesses and outline their testimony."); *see also* 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3851 (2d ed. 1987). A&H Supply has failed to meet this burden.

A&H Supply contends that, because it does not have assets in Texas, Goodman could not satisfy any judgment that might result from this case. This argument ignores the fact that a Texas judgment should be honored by an Idaho court. *See* U.S. CONST. art. IV, § 1 (Full Faith & Credit Clause); *Burns v. Baldwin*, 138 Idaho 480 (Idaho 2003) (applying Full Faith & Credit Clause to enforce judgment of another state).

The other factors do not weigh in favor of transfer. The risks of delay and prejudice are minimal in this action. A&H Supply argues that Idaho has an interest in resolving this case in Idaho, but Texas also has an interest in providing a forum for litigation over a contract that induced a Texas company to extend credit and supply equipment and parts, and that requires the application of Texas law.

The balance of factors does not favor transfer. The motion to transfer is denied.

## III.     Conclusion

The motion to dismiss for lack of personal jurisdiction and the motion to transfer venue are denied.

SIGNED on October 17, 2005, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge